IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LOUIE NUNES and ALESIA
NUNES,

   Plaintiffs,        Case No. 5:25-cv-644

v.

AMAZON.COM SERVICES, LLC,
a Foreign Limited Liability
Company,

   Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW Plaintiffs Louie Nunes ("Mr. Nunes") and Alesia Nunes ("Mrs. Nunes")(collectively "the Nunes" or "Plaintiffs"), by and through their undersigned counsel, and brings this Complaint and Demand for Jury Trial against Amazon.com Services, LLC, a Foreign Limited Liability Company ("Amazon"), alleging as follows:

### PARTIES

1. Mr. Nunes is an individual over 18 years of age and is thus *sui juris*.

2. Mrs. Nunes is an individual over 18 years of age and is thus *sui juris*.

3. The Nunes currently reside in Marion County, Florida, and did at all times relevant to the allegations herein resided in Marion County, Florida.

4. Defendant Amazon is registered to do business in the state of Florida as a "Foreign Limited Liability Company."

5. Pursuant to its filings with the Florida Secretary of State, Amazon has one member, who is a natural person who resides in the state of Washington.

6. Therefore, upon information and belief, the sole member of Amazon is a citizen of the state of Washington.

## JURISDICTION AND VENUE

7. This is an action under federal law, specifically, the Family and Medical Leave Act of 1993 ("FMLA").[1]

8. Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

9. The Florida common-law claim of loss of consortium arises under the same nexus of operative facts as the federal claims, and, therefore, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

10. Furthermore, there is complete diversity among the Parties, with the Nunes being citizens of the state of Florida and Amazon's member being a citizen of the state of Washington.

11. There is also $75,000 or more in controversy, without considering interests, costs, and/or attorney's fees.

12. Therefore, to the extent required, this Court also has diversity jurisdiction over the non-federal law claims, pursuant to 28 U.S.C. § 1332.

---

[1] 29 U.S.C. § 2601 *et seq.*

13. Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) as the events or transactions out of which this claim arose occurred in Marion County, which is located within the Middle District of Florida.

14. Thus, the Ocala Division is the proper division. M.D. Fla. Loc. R. 1.02(b)(4).

## GENERAL ALLEGATIONS

15. Mr. Nunes began his employment with Amazon on or about January 3, 2022.

16. Mr. Nunes was employed by Amazon on a full-time basis.

17. In late-August or early-September 2024, Mr. Nunes's lawful spouse, co-Plaintiff Mrs. Nunes, was scheduled for a surgical procedure on or about September 19, 2024 to address her serious medical condition.

18. Mr. Nunes promptly informed his supervisor John West ("West") at Amazon of his need to attend to his wife's serious health condition, and, more specifically, care for her during and after her upcoming surgery.

19. West directed Mr. Nunes to the in-house Human Resources department, where Mr. Nunes spoke with Raymond (l/n/u) about the upcoming surgery.

20. Raymond advised Mr. Nunes that he would need to bring in some paperwork to confirm the surgery.

21. About a day later, Mr. Nunes turned the paperwork in to Raymond confirming that Mrs. Nunes was going to have surgery, and Raymond advised that

everything was all set for Mr. Nunes to take the FMLA leave to attend to his wife.

22. In the weeks that followed, West was promoted and Nick (l/n/u) took over West's as Mr. Nunes's direct supervisor.

23. On September 19, 2024, the day of his wife's surgery, Mr. Nunes logged-in to the "Amazon A to Z App," upon which he learned that he was scheduled to work that day.

24. Confused, Mr. Nunes reached out to the Human Resources point-of-contact for app-related issues, who told Mr. Nunes that they had no record of him seeking FMLA leave and advised Mr. Nunes to speak with the local, in-house Human Resources team.

25. Accordingly, Mr. Nunes left the hospital and went to Amazon to speak with Raymond about his FMLA leave, whereupon he was told to "clock-in."

26. Raymond indicated that there had been something done incorrectly with respect to Mr. Nunes's leave and that he should begin to work his normal shift, and that Raymond would contact him during the day when things were cleared-up.

27. Raymond never contacted Mr. Nunes that day or any other day to advise him on the status of Mr. Nunes's FMLA leave.

28. In fact, Mr. Nunes continued to work day-after-day with no clarification on his FMLA status while his wife was recovering from the extreme impacts of her surgery.

29. Mr. Nunes repeatedly checked-in with the on-site Human Resources supervisor about the situation, to no avail.

30. On or about November 21, 2024, Mr. Nunes discovered he could not log in to his "Amazon A to Z App."

31. Mr. Nunes contacted the app-based Human Resources team to report the problem he was having logging-in and to get help remedying the issue.

32. The app-based Human Resources team advised Mr. Nunes that they would look into the situation and call him back.

33. Shortly thereafter, Mr. Nunes received the call back from the app-based Human Resources team, and the individual Mr. Nunes spoke with told Mr. Nunes that Amazon was "firing Mr. Nunes because of the FMLA issue" or words to that effect.

34. As a direct and proximate result of Amazon's violations of law, described herein, the Plaintiffs have required the services of undersigned counsel, to whom they are obligated to remit fees and costs.

## COUNT I (FMLA INTERFERENCE)

35. Mr. Nunes reaffirms and realleges paragraphs 1-34, above.

36. At all relevant times, Amazon employed 50 or more individuals within a 75-mile radius, and, as such, is a "covered employer" within the meaning of the FMLA.

37. At the time that Mr. Nunes sought benefits under the FMLA, he had been employed for the past twelve consecutive months and worked more than 1,250 hours during that twelve-month period.

38. Accordingly, Mr. Nunes was a "covered employee" within the meaning of the FMLA at all relevant times.

39. Mrs. Nunes suffered from an illness that involved continuing treatment by a health care provider, and thus qualified as a "serious health condition" within the meaning of the FMLA.

40. As Mrs. Nunes is and was Mr. Nunes's spouse at all relevant times, Mr. Nunes's caregiving in connection with Mrs. Nunes's "serious health condition" entitled him to the benefits under the FMLA.

41. Amazon was aware of Mr. Nunes's entitlement to FMLA leave, his intent to pursue his benefits pursuant to the FMLA, and his attempt to secure benefits under the FMLA.

42. Despite that, Amazon took actions to dissuade him from using the leave and to otherwise interfere with his leave.

43. For example, Amazon failed to provide Mr. Nunes with the necessary information for him to secure the leave to which he was entitled to care for Mrs. Nunes's "serious health condition," refused to return his calls and otherwise communicate with him about the status of Mr. Nunes's FMLA leave, compelled Mr. Nunes to work under threat of termination while Mrs. Nunes was in the hospital having surgery, and ultimately terminated Mr. Nunes's employment.

44. These actions had the intended and actual effect of discouraging Mr. Nunes from obtaining the benefits to which he was entitled.

45. Amazon's actions resulted in extreme stress and emotional anguish to Mr. Nunes and delayed his ability to assist in the care of his wife both practically during his employment and after his employment, as well as financially, as the job loss has deprived him of access to health insurance and financial resources.

46. Amazon's actions were not in good faith.

47. As a direct and proximate result of Amazon's actions, Mr. Nunes has suffered financial damages, including lost wages and benefits.

48. These injuries are ongoing and reasonably likely to continue into the indefinite future.

WHEREFORE Mr. Nunes respectfully demands that the Court enter judgment against Amazon for the following:

   a. Back pay, including lost wages, benefits, and other allowable monetary losses;

   b. Reinstatement or front pay, if reinstatement is not possible;

   c. Liquidated damages;

   d. Prejudgment and post-judgment interest;

   e. Attorney's fees and costs; and

   f. Any other relief the Court deems just and proper.

## COUNT II (FMLA RETALIATION)

49. Mr. Nunes reaffirms and realleges paragraphs 1-34 and 36-48, above.

50. Mr. Nunes engaged in protected activity by endeavoring to pursue and/or actually pursuing his rights under the FMLA.

51. Mr. Nunes suffered adverse actions in the form of being compelled to work under duress and terminated within about eight weeks after his need to use FMLA leave arose.

52. There is a causal connection between Mr. Nunes's protected activity and these adverse employment actions due to the close temporal proximity between the events, at minimum.

53. Amazon did not have a legitimate, non-retaliatory reason for terminating Mr. Nunes's employment.

54. As a direct and proximate result of Amazon's retaliatory conduct, Mr. Nunes has suffered financial damages, including lost wages and benefits.

55. These injuries are ongoing and reasonably likely to continue into the indefinite future.

WHEREFORE Mr. Nunes demands that the Court enter judgment against Amazon for the following:

    a. Back pay, including lost wages, benefits, and other allowable monetary losses;

    b. Reinstatement or front pay, if reinstatement is not possible;

    c. Liquidated damages;

    d. Prejudgment and post-judgment interest;

    e. Attorney's fees and costs; and

    f. Any other relief the Court deems just and proper.

## COUNT III (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

56. Mr. Nunes reaffirms and realleges paragraphs 1-34, above.

57. Mr. Nunes's supervisor intentionally failed to take the actions necessary to assist Mr. Nunes in obtaining the leave to which he was entitled under the FMLA.

58. As a direct and proximate result of West's intentional failure to take the actions necessary to ensure that Mr. Nunes's FMLA leave request would be processed and granted, Mr. Nunes suffered intense emotional distress.

59. In particular, Mr. Nunes was tremendously worried the entire day he was at work while his wife underwent a very substantial surgical procedure, which led to outward manifestations of his distress and sorrow.

60. Despite observing his distress, West, Nick, and Kevin continued to mandate that Mr. Nunes remain at work.

61. These supervisors knew and intended that their behavior would likely cause emotional distress to Mr. Nunes.

62. Their conduct was so outrageous as to be regarded as odious and intolerable in a civilized community.

63. Their conduct directly and proximately caused Mr. Nunes extreme emotional distress.

64. Mr. Nunes's emotional distress was severe and remains so.

65. Amazon is liable for the actions of West, Nick, and Kevin, as well as the members of the Human Resources department because they were acting on behalf of

Amazon and in the course and scope of their respective duties with Amazon when they inflicted the emotional distress on Mr. Nunes.

66. Therefore, Amazon is vicariously liable for their conduct.

67. In enabling this conduct, Amazon acted maliciously and with callous disregard for Mr. Nunes's legal rights.

WHEREFORE Mr. Nunes demands that the Court enter judgment against Amazon for the following:

  a. Compensatory damages, including, but not limited to compensation for physical injury and past, present, and future loss of consortium;
  b. Nominal damages;
  c. Punitive damages; and,
  d. Any other relief the Court deems just and proper.

### COUNT IV (LOSS OF CONSORTIUM AS TO MRS. NUNES)

68. Mrs. Nunes reaffirms and realleges paragraphs 1-34, 36-48, 50-55, and 57-67, above.

69. Mrs. Nunes has been married to Mr. Nunes continuously since the mid-1990's.

70. Thus, Mrs. Nunes was in a valid and lawful marriage with Mr. Nunes at the time he suffered the injuries in Counts I-III, *supra*.

71. As a direct and proximate result of Amazon's unlawful actions towards Mr. Nunes, Mrs. Nunes suffered a loss of consortium.

72. Mrs. Nunes has lost the benefit of Mr. Nunes's spousal support and congress, including negative impacts to essential elements of marriage, including the love, sex, companionship, society, comfort, and solace attendant with that legal relationship.

73. Mrs. Nunes also experienced a decrease in assistance with household tasks as a direct and proximate result of Amazon's conduct towards Mr. Nunes.

74. These injuries are ongoing and reasonably likely to continue into the indefinite future.

WHEREFORE Mrs. Nunes demands that the Court enter judgment against Amazon for the following:

   a. Compensatory damages, including, but not limited to compensation for physical injury and past, present, and future loss of consortium;
   b. Nominal damages;
   c. Punitive damages; and,
   d. Any other relief the Court deems just and proper.

## **JURY TRIAL DEMAND**

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 15th day of October, 2025.

/s/ *Shaina Thorpe*
**SHAINA THORPE**
Florida Bar No. 0055464
Primary: shaina@thorpelaw.net
Secondary: admin@thorpelaw.net

**THORPELAW, P.A.**
100 S. Ashley Drive, Suite 600
Tampa, Florida 33602
Telephone: (813) 400-0229
Fax: (813) 944-5223

*Lead Counsel for Plaintiffs Louie Nunes and Alesia Nunes*