**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

LOUIE NUNES and ALESIA
NUNES,

     Plaintiffs,

v.                                                                    Case No. 5:25-cv-644-MMH-PRL

AMAZON.COM SERVICES, LLC, a
foreign limited liability company,

     Defendant.

_____

### O R D E R

**THIS CAUSE** is before the Court on Defendant's Partial Motion to Dismiss (Doc. 15; Motion), filed January 20, 2026. In the Motion, Amazon.com Services, LLC (Amazon) seeks dismissal of Counts III and IV of Louie and Alesia Nunes's Amended Complaint and Demand for Jury Trial (Doc. 11; Amended Complaint), filed November 19, 2025. On February 10, 2026, The Nuneses timely filed Plaintiff's [sic] Response in Opposition to Defendant's Partial Motion to Dismiss (Doc. 20; Response). Accordingly, this matter is ripe for review.

## I.     Background[1]

Louie Nunes (Mr. Nunes) has been a full-time employee at Amazon since January 3, 2022. Amended Complaint ¶¶ 15–16. In 2024, Mr. Nunes's wife, Alesia Nunes (Mrs. Nunes), scheduled a surgery to treat a serious health condition. Id. ¶ 17. After learning about the surgery, Mr. Nunes told his supervisor, John West, and a human resources employee, Raymond,[2] that he needed to take time off work to care for his wife. Id. ¶¶ 18–19. The day after he spoke with Raymond, Mr. Nunes provided Amazon with the necessary documentation of the surgery, and Raymond granted Mr. Nunes leave under the Family Medical Leave Act (FMLA). Id. ¶ 21.

The day of Mrs. Nunes's surgery, September 19, 2024, Mr. Nunes logged into his Amazon app and discovered that the company had scheduled him to work that day. Id. ¶ 23. He contacted human resources, and an employee said that the department had no record of his FMLA leave. Id. ¶ 24. Mr. Nunes then left the hospital to speak with Raymond about the issue. Id. ¶ 25. Raymond explained that there had been an error in processing Mr. Nunes's leave request,

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the Nuneses, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Amended Complaint and may differ from those that ultimately can be proved.

[2] The Nuneses do not provide the full name of this individual, so the Court simply refers to him as "Raymond."

advised Mr. Nunes to work his shift as scheduled, and assured Mr. Nunes that he would reach out when he resolved the issue. Id. ¶ 26. Mr. Nunes followed Raymond's instructions and worked his shift. See id. ¶¶ 27–28. Throughout the day, Mr. Nunes felt "tremendously worried" to be missing Mrs. Nunes's "very substantial surgical procedure," and he exhibited "outward manifestations of . . . distress and sorrow." Id. ¶ 61. Although West and other employees noticed Mr. Nunes's distress, Amazon continued to require that Mr. Nunes work. Id. ¶ 62.

In the days following the surgery, Mr. Nunes received no word from Raymond, despite repeated inquiries into the status of his leave request. Id. ¶¶ 27–29. As a result, Mr. Nunes "continued to work day-after day." Id. ¶ 28. Over two months later, on November 21, 2024, Mr. Nunes discovered that he could not log into his Amazon app. Id. ¶ 30. After reporting the problem to human resources, an employee told Mr. Nunes that Amazon fired him "because of the FMLA issue." Id. ¶¶ 31, 33. Following Mr. Nunes's termination, Mrs. Nunes "lost the benefit of Mr. Nunes's spousal support and congress, including negative impacts to . . . love, sex, companionship, society, comfort, . . . solace[,]" and help with household chores. Id. ¶¶ 75–76.

The Nuneses initiated this action against Amazon on October 15, 2025. See generally Complaint and Demand for Jury Trial (Doc. 1). A month later, on November 19, 2025, the Nuneses filed the Amended Complaint. See generally

Amended Complaint. In the Amended Complaint, Mr. Nunes brings claims for: FMLA interference, Count I, id. ¶¶ 35–48, FMLA retaliation, Count II, id. ¶¶ 49–57, and intentional infliction of emotional distress, Count III, id. ¶¶ 58–69. And Mrs. Nunes brings a claim for loss of consortium, Count IV. Id. ¶¶ 70–77. In the Motion, Amazon seeks dismissal only of Counts III and IV. See generally Motion.

## II.   Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation and quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal[]") (quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678–79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III.   Discussion

In the Motion, Amazon only moves to dismiss Counts III and IV of the Amended Complaint, see Motion at 1, which contain claims for intentional infliction of emotional distress and loss of consortium, respectively, see Amended Complaint ¶¶ 58–77. Amazon asserts that (1) both claims are due to

be dismissed because the Nuneses failed to seek workers' compensation benefits before filing suit, as required by the Florida Workers' Compensation Act (the FWCA), Motion at 4–9, (2) Mr. Nunes fails to state a claim for intentional infliction of emotional distress, id. at 9–14, and (3) Mrs. Nunes cannot recover loss of consortium for violations of the FMLA, id. at 14–17. Upon review, the Court finds that the Motion is due to be granted, and both Counts III and IV are due to be dismissed. As a result, the Court need not determine whether the Nuneses' claims are barred by the FWCA.

### A. Intentional Infliction of Emotional Distress

"To state a valid claim for intentional infliction of emotional distress under Florida law, a plaintiff must plausibly allege the following elements: '(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.'" Plowright v. Mia. Dade Cnty., 102 F.4th 1358, 1367–68 (11th Cir. 2024) (quoting Moore v. Pederson, 806 F.3d 1036, 1053 (11th Cir. 2015)).

Turning first to whether Amazon's alleged conduct was sufficiently outrageous, the Court notes that this element of an intentional infliction of emotional distress claim can only be met by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Moore, 806 F.3d at 1053 (quoting Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278–79 (Fla. 1985)). The Eleventh Circuit Court of Appeals has observed that "[o]ne way to determine whether this standard is met is to consider whether the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Plowright, 102 F.4th at 1368 (internal quotation omitted) (quoting Metro. Life Ins. Co., 467 So. 2d at 279).

"In Florida, '[w]hether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law' to be decided by the court[] at the earliest opportunity, 'not a question of fact[.]'" Id. (quoting Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)). And the conduct "must be evaluated on an objective basis." Matsumoto v. Am. Burial & Cremation Servs., Inc., 949 So. 2d 1054, 1056 (Fla. 2d DCA 2006). "The subjective response of the person affected by the conduct does not control." Id.

A review of Florida case law, as well as cases in this Circuit applying Florida law, establishes that the standard for the requisite outrageous conduct to support a claim of intentional infliction of emotional distress "is particularly high in Florida." Plowright, 102 F.4th at 1368 (quoting Clemente v. Horne, 707 So. 2d 865, 867 (Fla. 3d DCA 1998)); see also Foreman v. City of Port St. Lucie, 294 F. App'x 554, 557 (11th Cir. 2008); Golden v. Complete Holdings, Inc., 818

F. Supp. 1495, 1499 (M.D. Fla. 1993) ("Although there is no definitive example of what constitutes 'outrageous conduct' for the purposes of maintaining a cause of action for intentional infliction of emotional distress, Florida case law on the subject has evinced a comparatively high standard."). [3] Indeed, the tort is recognized "only in the most outrageous circumstances." Mundy v. S. Bell Tel. and Tel. Co., 676 F.2d 503, 505 (11th Cir. 1982) (quoting Habelow v. Travelers Ins. Co., 389 So. 2d 218, 220 (Fla. 5th DCA 1980)). Moreover, the Eleventh Circuit Court of Appeals has observed that "tortious or criminal intent, . . . intent to inflict emotional distress," and "conduct [that] has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort[]" on their own are "not enough" to establish outrageousness. Moore, 806 F.3d at 1053 (internal quotations omitted) (citing and quoting Metro. Life Ins. Co., 467 So. 2d at 278). As pertinent to Mr. Nunes's claim, historically, plaintiffs have been unsuccessful in attempting to plead intentional infliction of emotional distress claims arising in the employment context. Duckworth v. Symon Says Enters., No. 8:13-cv-2829-T-33AEP, 2014 WL 495389, at *3 (M.D. Fla. Feb. 6, 2014). [4] Indeed, Florida's First District

---

[3] The Court notes that, although decisions of district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P.

Court of Appeals has observed that courts generally allow these claims to proceed when they involve "repeated verbal abuse coupled with repeated offensive physical contact." Johnson v. Thigpen, 788 So. 2d 410, 413–14 (Fla. 1st DCA 2001).

Here, Mr. Nunes contends that Amazon's conduct in requiring him to work, despite approving his request for FMLA leave, and subsequently firing him was sufficiently outrageous. Response at 6–7; see Amended Complaint ¶¶ 26–33. But the allegations in his Amended Complaint fail to clear Florida's high bar for outrageous conduct in the employment setting. See Amended Complaint ¶¶ 26–33. Notably, courts interpreting Florida law have held that plaintiffs bringing similar claims failed to satisfy the outrageousness element. See, e.g., Nickerson v. HSNi, LLC, No. 8:11-cv-538-T-27AEP, 2011 WL 3584366, at *2–*3 (M.D. Fla. Aug. 15, 2011); Halstead v. LBAM Inv. Grp., No. 3:15-cv-467/MCR/EMT, 2016 WL 9113446, at *3 (N.D. Fla. Nov. 7, 2016); Dixon v. McNesby, No. 3:08-246-RV/MD, 2009 WL 10674252, at *2–*3 (N.D. Fla. Jan. 6, 2009). For example, in Nickerson, the court held that an employer terminating an employee for requesting FMLA leave, "while perhaps unlawful," was not sufficiently outrageous. See Nickerson, 2011 WL 3584366, at *3. Similarly, in Halstead, the court held that an employer firing an employee after it approved

32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

- 9 -

her FMLA leave request "pale[s] in comparison" to the "relentless physical abuse <u>and</u> verbal abuse" required to state a claim for intentional infliction of emotional distress in the employment setting. <u>See</u> <u>Halstead</u>, 2016 WL 9113446, at *2–*3 (emphasis in original). Consistent with this authority, the Court concludes that Mr. Nunes fails to allege that Amazon's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Moore</u>, 806 F.3d at 1053 (quoting <u>Metro. Life Ins. Co. v. McCarson</u>, 467 So. 2d 277, 278–79 (Fla. 1985)).

Additionally, Mr. Nunes has not plausibly alleged that the distress he suffered was sufficiently severe. "[S]evere emotional distress means emotional distress of such a substantial quality or enduring quality[] that no reasonable person in a civilized society should be expected to endure it." <u>Kim v. Jung Hyun Chang</u>, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018) (second alteration in original) (quoting <u>Kraeer Funeral Homes, Inc. v. Noble</u>, 521 So. 2d 324, 325 (Fla. 4th DCA 1988)); <u>see also</u> <u>Brown v. Bellinger</u>, 843 F. App'x 183, 188 (11th Cir. 2021). "[T]o prevent the tort from becoming a venue for litigation over every emotional injury[,]" Florida courts have held that "significant feelings of fright, shame, worry, and humiliation . . . occasioned by the acts of others . . . , even if regrettable," do not rise to the requisite level of severity because they are "an unavoidable part of living in society." <u>Kim</u>, 249 So. 3d at 1306. The only distress

that Mr. Nunes alleges he suffered was that he was "tremendously worried" and displayed "outward manifestations of his distress and sorrow." Amended Complaint ¶ 61. These are precisely the kinds of "unavoidable" injuries that are not of "such a substantial quality or enduring quality[] that no reasonable person in a civilized society should be expected to endure" them. Kim, 249 So. 3d at 1305. Therefore, Mr. Nunes fails to allege facts sufficient to satisfy the severity element of his intentional infliction of emotional distress claim. As such, the Motion is due to be granted as to Count III, and Count III of the Amended Complaint is due to be dismissed.

### B. Loss of Consortium

In a marriage, consortium consists of the sexual relations, "affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance" between spouses. Gates v. Foley, 247 So. 2d 40, 43 (Fla. 1971). Under Florida law, a spouse can recover for her loss of consortium when her spouse is "injured as a proximate result of the negligence of another." Id. at 45. The spouse with a cause of action for loss of consortium has a claim that is derivative of the injured spouse's claim. Faulkner v. Allstate Ins. Co., 367 So. 2d 214, 217 (Fla. 1979) ("Mrs. Faulkner's claim for loss of consortium is derivative in nature and wholly dependent on her husband's ability to recover."); Gates, 247 So. 2d at 45 (Fla. 1971) (stating that a wife's loss of consortium claim "is a derivative right and she may recover only if her husband has a cause of action against the same

defendant"); accord Stone v. United States, 373 F.3d 1129, 1132 (11th Cir. 2004) (holding that the district court did not err by dismissing parents' loss of consortium claim when child's claim was dismissed). Because Mr. Nunes's intentional infliction of emotional distress claim is due to be dismissed, Mrs. Nunes's loss of consortium claim can only survive if it is derivative of Mr. Nunes's FMLA claims. The Court concludes that it is not for the following reasons.

As a preliminary matter, it does not appear that the FMLA contemplates loss of consortium as a remedy. The Eleventh Circuit has summarized the relief available under the FMLA as follows:

> Under the FMLA, any employer who interferes with an employee's protected rights under the Act is liable to the employee for "damages" and "equitable relief." 29 U.S.C. § 2617(a)(1)(A)–(B). The FMLA divides these remedies into two subsections. Id. The first subsection allows "damages" for "wages, salary, employment benefits, or other compensation denied or lost. . . ." 29 U.S.C. § 2617(a)(1)(A)(i)(I). That subsection also covers non-wage monetary losses, interest, and liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(i)(II)–(A)(iii). The second subsection provides for "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B).

Wai v. Fed. Express Corp., 461 F. App'x 876, 884 (11th Cir. 2012). Nothing in the statutory text suggests that non-injured spouses may recover for loss of consortium. See generally 29 U.S.C. § 2617. Additionally, as far as the Court can discern, the Eleventh Circuit has not addressed whether loss of consortium is available under the FMLA. See Crawford v. City of Tampa, 397 F. App'x 621,

624 n.1 (11th Cir. 2010) (per curiam) ("We express no opinion about the availability of a loss of consortium claim for a violation of a spouse's federal statutory rights under Florida law, as the parties have not briefed the issue. . . . We see no harm in temporarily abstaining from addressing the state law question on the possibility that the merits resolution will moot the issue."). At least one court in the Middle District of Florida has construed this silence to permit loss of consortium claims based on the FMLA to proceed beyond the pleading stage. See Taranato-King v. AdaptHealth, LLC, No. 8:23-cv-01454-AAS, 2023 WL 8452052, at *2 (M.D. Fla. Dec. 6, 2023) ("Without Eleventh Circuit case law definitively saying a plaintiff cannot recover for loss of consortium deriving from an alleged violation of the FMLA, it would be inappropriate to dismiss the derivative claim for loss of consortium at this stage in the litigation."). However, many other courts have taken a different approach to the absence of controlling authority, opting to examine the availability of such a remedy under other fair employment and civil rights laws, such as Title VII, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), 42 U.S.C. §§ 1981 and 1983, and state human rights laws. After reviewing those laws, these courts have concluded that loss of consortium is unavailable under the FMLA. See, e.g., Johnson v. Ga. Television Co., 1:04-cv-1320-WSD, 2005 WL 8154780, at *8 & n.9 (N.D. Ga. Nov. 4, 2005) (relying on Title VII); Cookenmaster v. Kmart Corp., No. 07-13947-BC, 2008

WL 4539385, at \*19 (E.D. Mich. Oct. 7, 2008) (citing cases that reject loss of consortium claims deriving from § 1981, Title VII, the ADEA, the ADA, and state human rights laws); Brown v. ATX Grp., Inc., No. 3:11–CV–3340–N–BH, 2012 WL 3962620, at \*11 (N.D. Tex. July 16, 2012) (citing cases that reject loss of consortium claims deriving from § 1981, § 1983, Title VII, the ADEA, the ADA, and state human rights laws); Stocker v. Green, Tweed & Co., CIVIL ACTION NO. 18-4503, 2020 WL 4437113, at \*16 (E.D. Pa. Aug. 3, 2020) (same).

Notably, courts in this Circuit appear to have consistently held that a plaintiff cannot recover loss of consortium damages for violations of Title VII, the ADA, and the Florida Civil Rights Act (FCRA). See, e.g., Facsina v. Isla Morada, Vill. of Islands, No. 21-10092-Civ-GAYLES/TORRES, 2022 WL 3928350, at \*2, \*8 (S.D. Fla. Aug. 16, 2022), report and recommendation adopted, No. 21-CV-10092, 2022 WL 3910703 (S.D. Fla. Aug. 31, 2022) (holding that loss of consortium is not an available remedy under the ADA and FCRA); Time v. Publix Super Mkt., Inc., No. 06-20926-CIV-SEITZ/MCAILEY, 2007 WL 9702200, at \*2 (S.D. Fla. Jan. 29, 2007) (holding that loss of consortium is not an available remedy under Title VII); Cook v. Robert G. Waters, Inc., No. 96-1459-CIV-T-17E, 1996 WL 685842, at \*1 (M.D. Fla. Nov. 13, 1996) (holding that loss of consortium is not an available remedy under Title VII and the ADA). As in Johnson, Cookenmaster, Brown, and Stocker, the undersigned is persuaded that, due to the similarities between these laws and the FMLA, Mrs. Nunes's

loss of consortium claim fails as a matter of law. Accordingly, the Motion is due to be granted as to Count IV, and Count IV is due to be dismissed.

## IV.    Conclusion

In sum, the Motion is due to be granted. The intentional infliction of emotional distress claim in Count III is due to be dismissed because Mr. Nunes fails to allege facts sufficient to support a finding that Amazon's conduct was sufficiently outrageous or that his emotional distress was severe. Additionally, the loss of consortium claim in Count IV is due to be dismissed because it can be derived from neither Mr. Nunes's intentional infliction of emotional distress claim—due to his failure to state a claim—nor his FMLA claims—because loss of consortium is not an available remedy under the FMLA.

Accordingly, it is

**ORDERED:**

1. Defendant's Partial Motion to Dismiss (Doc. 15) is **GRANTED**.

2. Counts III and IV of the Amended Complaint and Demand for Jury Trial (Doc. 11) are **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in chambers this 19th day of May, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

lc36

- 15 -

Copies to:
Counsel of Record